We are now recording. Hear ye, hear ye, this Honorable Appellate Court for the Second Judicial District is now in session. The Honorable Susan F. Hutchinson presiding. Your Honors, the first case on the docket this morning is 2-22-0091, the people of the state of Illinois, Plaintiff Atlee v. Keith L. Lang, Defendant Appellant. Arguing for the appellant, Mr. Terry D. Slaw. Arguing for the appellee, Mr. John G. Barrett. Good morning, counsel, and thank you for the continuance last time. We had a last minute issue and I'm glad we could get together today. So, Mr. Slaw, if you're ready, you may proceed. And I know Mr. Wysocki is in here somewhere, but we'll just listen to you. You're mute. You have to unmute. All right, I'll get used to this. It's only been three years. Okay, may it please the court and counsels on behalf of my client, Keith Lang, and my co-counsel, Albert L. Wysocki, retired judge, may it please the court. This cause comes down before you on our motion, on appellant's brief in reference to my client's conviction for the offense of drug-induced homicide by a jury out of the circuit court in McHenry County. There are multiple issues that we raised in the brief. The two major ones, although I'm prepared to address all of them, are the actions of ineffective counsel. And additionally, a novel, what we believe to be a novel argument, a motion that the circuit court incorrectly denied the motion in arrest of judgment. We could start with the motion in arrest of judgment. The theory of the motion in arrest of judgment and the motion that the indictment should have been dismissed in the case, should have been dismissed was significantly because the testimony at the grand jury hearing, which caused Mr. Lang to be indicted, was misleading to the jury, which caused substantial injustice to the grand jury when indicting Mr. Lang. Mr. Slaw, I apologize, but I want to ask a question about that. I assume you're talking about the coroner's certificate showing accidental. Yes, you're right. Well, what are the, you know, what's, by what standards do grand juries or rather coroner's juries operate? Do they have the same obligations as a grand jury? What's the difference? Well, was there a coroner's inquest here or coroner's jury or was it just the determination of the coroner? Just the determination of the coroner and based on the certificate of death. Now, the legal theory here is, and again, it is novel, but there was a case out of the circuit court of Cook County, which I did cite in the brief Roddick versus Ezekie, which was a first district appellate number 2021 IL app first two zero zero five five zero. It was a rule 23 order. However, even though it can't be used as precedent, precedential, I believe it certainly is persuasive. And the argument here, and I'm opined to this court and we're asking the court to have an open mind here because is that coroners by statute, coroners by statute are standby sheriffs. I'll point to article seven of the constitution of the state of Illinois, section three, which three C, which states that coroners are constitute. I'm sorry, section four. I'm sorry. I apologize. Our constitutionally created offices. Then if you go to the Illinois statutes, 55 ILCS five slash three dash three Oh seven, each coroner shall be the conservator of the peace in his County. And in his performance of his duty show present the same powers as the sheriff. Then continue on to 55 ILCS five slash three dash three zero zero eight. When it appears from the papers in a case that the file that he's interested therein or of the kin or partial to or prejudice against either party. So there is no conflict like that. But what I'm trying to show here and opine to the court this morning is that coroners are a constitutionally elected office and they are an arm of law enforcement. They meaning the corner they're part of the investigation. The corner provided the death certificate. The death certificate could be classified three ways, accident, homicide, or suicide. And in this instance is set forth in the brief, the manner of death in this document prepared by the corner, who is an arm of law enforcement said it was an accident. Mr. Slaw, is there anything in that a death certificate that indicates who might have delivered this substance to the defendant or to, I'm sorry, to the victim, because that is one of the elements of the criminal offense. So why isn't this just isn't a death certificate, a non testimonial document that indicates the cause of death. It doesn't talk about who caused it. It doesn't talk about how it was caused other than accidental, which is a very broad term. And the corner is not responsible to make a decision. If it is not obvious that it was a homicide. In the only test case, and I'll try to answer it the best I can and it will support my position is that certainly there's nothing in here that says who delivered the substance. That's not part of it. However, the issue here is, is that there was a document prepared by the corner that said that the cause of death, the manner of death, the manner of death was not the manner. I apologize. And I get a little emotional about this, but the manner of death says that it is, it was an accident. The testimony at the jury hearing was a testimony off of the toxicology report prepared by an agent of the corner. So if you're, if the state it's, it's the theory here, all be it novel, but it's a theory here that if the state is going to um, question a law enforcement office officer over the toxicology report, they need to take it to the next step. So the fact that, you know, the causation is set forth by Neary. It's not, that's not what we're here to talk about. The, the, the death certificate is the of death said it was an accident in, according to the Roddick case out of the first district in the circuit court of cook County. The, in that instance, the medical examiner, and I'm arguing that there's very similar, if not equivalent to the corner, except medical examiner is not an elected official. Well, they, in their discretion, the, the Ken's can classify this death three ways, accident, homicide, or suicide. It doesn't say thou shalt call it an accident. Doesn't say thou shalt call it a homicide. It doesn't say thou shalt call this death, a suicide. Mr. Slaw, we're not here to talk about the causation. We know the cause of death. That's not the point. But the manner of death, your honor, I think I'm sorry to interrupt. Go ahead. Problem is we have a, a coroner's report and we have an indictment. They have different elements and the one just establishes cause. It does not establish anything or relate to anything about who or how. So why is it so important to these proceedings? Because if I can, if I can inject a question on the same issue, I'm trying to get the nexus between the argument that the state intentionally misled the grand jury. Yeah. Why, how does the fact that somebody voluntarily dusted heroin established the ultimate purpose as to why they ingested the substance? I thought two different issues. First of all, in my opinion, based on Oliver, the action of the, it can be misleading, even if it's inadvertent. So the, the, the, the, the nexus here is, and, and this is my argument is that the manner of death is the product of the toxicology report, which was prepared by the law enforcement, I'm sorry, by, by the coroner, which is an, which is an arm of law enforcement by statute. I truly believe that to, to properly go before a grand jury, that a manner of death is relevant. And I would say that if this grand jury or any grand jury had a document prepared by the coroner that says the manner of death was accident, I don't believe, I know that you can't, you would never, it would not bring forth an indictment for murder. Was that the homicide for not for homicide? Did, did the coroner, Mr. Slaw, did the coroner have any evidence from any witness about this case other than the toxicology responsibilities? No. Then how would that change this indictment? Because under NERI, if you have, if, if an individual ingests fentanyl, which is a controlled substance, and if you didn't procure under the drug-induced homicide statute, if you ingested fentanyl and you, and there's no prescription, which you can only get a prescription in a hospital, this was apparently purchased somewhere on the streets. It's, it's a homicide. It's not an homicide during the investigation. And I'm not saying it wasn't, but the document which, which led to the indictment was the part of the process. It says accident. And I believe that it is the duty of the prosecutor who had this document in his file was for eight months, for eight months, that it should, it's relevant to the grand jury. Are you, are you considering this document, this certificate, death certificate, a exculpatory evidence? Is that what you're trying to tell us? I did not raise Brady in this motion, but clearly I think it's, it's, it's arguable that it might be, but I'm not, I didn't raise this. A grand jury proceedings is not a mini trial. It is to touch upon probable cause. It is not to touch upon the ultimate outcome. So how is this death certificate going to help the ultimate outcome? These are not trials was addressed in, in several of these decisions. Many of them out of the second district, people versus D. Vincenzo, people versus Oliver, people versus Basile, people versus Holmes. And it's, I acknowledge that these are not trials, but if, if there's documentation or evidence that could lean the grand jury in a different direction, it, it, it, it, by not bringing it forward, it's misleading. In many of these cases, for example, the, the case, bear with me for one, one minute. Fassler, not, not Fassler. I apologize. The, the case of D. Vincenzo was out of DuPage County, the state's attorneys at the time who were involved became judges, Judge Creswell and Judge Kinsella, both very fine jurists and, and, and attorneys. But what happened there was, there was a, a, a change. The, the jury, the grand jury initially came down with a no true bill. Then they broke for lunch and assistant Kinsella, Judge Kinsella made a motion to, to modify it and reconsider. And the, the grand jury based on that motion to reconsider said the, said that the indictment was well-founded. The Illinois Supreme Court said, we're getting kind of slow on time, but most importantly, did D. Vincenzo have anything to do with withholding a coroner's certificate or a death certificate? No, but no, it did not. But here, but here's the thing, what, what, what, how these Illinois Supreme Court said that the state out of the 18th circuit rehabilitated their position was, is they, they said that assistant state's attorney, Creswell and Kinsella both admonished the grand jury as to the law, gave them case law. So these state's attorneys realizing that they initially, when the true bill was denied initially, they came back after lunch and clarified it. In this instance, if I could ask you a point of question here, if we were to determine the convict's death was somehow accidental as exculpatory evidence, do you have any cases that make it clear the state is under an obligation to present that finding to the grand jury? Do you have case law that says that? The only case law I'm pointing this is the rule 23 opinion out of Cook County, which I cited and made part of the brief. People, Roddick versus Ezekie. I was the trial counsel on Roddick. I was the appellate lawyer on Roddick. I asked the Cook County, Cook County judge in an action in mandamus to correct the death certificate of Roddick's child from that of accident to homicide. And it was dismissed on a 615 motion affirmed by the first district appellate court saying that it's solely within the discretion of the medical examiner in Cook County as to classify the manner of death. So in this instance, if it's in this coroner's discretion, it's the coroner decides, and I've said this a few times, I don't mean to repeat myself, accident, homicide, or suicide. And if the coroner's determination in their discretion is that it's homicide, and if you're, I'm sorry, accident, but you're asking a grand jury to indict an individual for drug-induced homicide, when the finding in the manner of death is accident, I think it's not only inconsistent, but it's misleading. Now, maybe I'm not- So the coroner gets to decide what evidence is presented to the grand jury? Not saying the coroner, well, the toxicology report certainly went in. So why wouldn't the manner of death? I mean, that's just how, again, perhaps it's thinking outside of the box, but it's not unreasonable. And this is, Judge Wysocki and I have gone over this, and we know the ramifications of this argument. And our client, Mr. Lang, had the co-visto, the manner of death said accident. Okay. All right, Mr. Slaw, your time is up, and unfortunately you did not get to your second issue, but maybe Mr. Barrett will address it so that you can bring it back up. But it is time to go on to Mr. Barrett, and you'll have an opportunity to respond if you wish. However, Justice Jorgensen, do you have any additional questions? No, I appreciate the time limit. I will come back to that on his reply. And Justice Hudson, any additional questions? No, at this time. Thank you. Thank you. All right. Then, Mr. Barrett, you may proceed. Thank you, Your Honor. Good morning, Your Honors. May it please the court and counsel. Can you hear me okay? Yes. Yes, sir.  Just touching on first the coroner's report, the grand jury was ultimately tasked with deciding whether or not a crime had occurred. That was not the primary responsibility of the coroner. The cause of death, especially early on in a case where someone- Let's be clear. This is not about cause of death. This is about the manner of death. Right. Manner of death. Cause of death for this victim was asphyxiation. Their heart stopped. They stopped respiration. This is manner of death. And it is a significant difference. The coroner decides what, based on the evidence presented to the coroner, which is not necessarily all of the evidence that ultimately is presented either to the grand jury or a trial. So the criminal offense is ultimately decided by the grand jury. That is not the primary responsibility of the coroner. So the fact that the grand jury had evidence that the manner of death in this case was an accident was not inconsistent with it being a drug-induced homicide. Because if you look at the purpose of the statute, the drug-induced homicide statute obviously is saying, hey, this is a horse of a different color. It's not your typical run-of-the-mill homicide where you have someone arriving with a bullet in their head. Or it's an obvious or apparent homicide. The drug-induced homicide statute is meant to address situations where it isn't clear initially what happened or whether or not, let's say the seller in this case had his own heroin and he had supplied himself. Well, we wouldn't be charging a crime there because he was the source. He was the primary source. He injected his own heroin and passed away. We wouldn't be charging somebody else. So it takes an investigation into who is the source of this illicit substance. How was it obtained? And there are a lot of factors here to consider. It's an ongoing investigation. Initially, the coroner and looking at the manner of death didn't have all that information and wasn't tasked with deciding whether or not a crime had occurred. A homicide simply just indicates that a death is caused by another human being. A homicide isn't synonymous with criminal activity. But we do know that sometimes, and it's probably in the case that you identified that there is a bullet wound, there is a knife wound, there are multiple knife wounds, a coroner will call it a homicide. That's one of the operative death issues, whether it's suicide, homicide, or accident, correct? Correct. Where it's obvious on its face and the presenting physicality of the death indicates a homicide, that's absolutely true. I mean, there's overlap there. But here, the drug-induced homicide statute is essentially elaborating on the kinds or the type or a homicide that wouldn't ordinarily be perceived just in the manner that a bullet wound or a knife or a stabbing type of homicide, which is apparent on its face. And ultimately, it was the grand jury who was tasked with deciding whether or not a crime had occurred. And they were instructed specifically on the law and on what constitutes probable cause, the elements. There is no mens rea in the drug-induced homicide statute. The grand jury was not misled in any way. They were told specifically that in order to find the defendant guilty, or in order to find that defendant had committed the crime, had unlawfully delivered the controlled substance, in this case, it was a combination of heroin and fentanyl, to the decedent. And those were the two elements that were provided to the grand jury. They were not misled in any way. Does the grand jury have an obligation, or does the state, in presenting evidence to the grand jury, have an obligation to present everything that they're going to use for purposes of trial? All exculpatory or non-exculpatory evidence? If anything that is material to the crime, yes. But here it is, it wasn't clear that the manner of death being termed an accident was somehow even relevant because it had no bearing on the elements of the crime. It's not an intent crime. So to comment on the fact that the victim accidentally overdosed, that's actually consistent with the drug-induced homicide statute, is that the victim, when he injected the substance, wasn't intending to kill himself. He was intending to get high. He accidentally died. That fits the definition of the drug-induced homicide. It's consistent with that. But I think, isn't counsel's argument that failure to fully disclose this to the grand jury is a violation of due process? Well, here it wasn't, it wouldn't have been a violation of due process to disclose information that wasn't, that wasn't material or relevant to whether or not a crime had occurred. What if the coroner had said it was suicide? It is a popular method for committing suicide, is an overdose of fentanyl. It's painless, it's quick. The coroner said it was suicide. If the coroner had determined that the cause of death was a suicide, defendant had purchased heroin and fentanyl for the purpose of injecting and killing himself, obtained that from the defendant, that would still be consistent with the drug-induced homicide statute. All that is required, the only elements are that there's an unlawful delivery to a person and that person, and then that person dies as a result of injecting that substance. All right, let me ask you this. So if the coroner were to suggest homicide, does that mean that the state should prosecute every case in which the coroner determines it is a homicide? This is a death at the hand of another individual. If the cause of death is determined to be a homicide, and just generally speaking, there are circumstances in which a homicide isn't a crime, where maybe the death was the result of someone defending themselves, or there's a legal justification for the death. Executions of that's a legally justified homicide. The coroner doesn't distinguish those things. The coroner simply says, manner of death, homicide. It's not a legal conclusion. When the coroner concludes that there is no death at the hand of another, and says that the manner of death here is an accident, why isn't that relevant? Well, because it isn't clear on its face the way we use the example of a gunshot wound or a knife, a murder or a homicide resulting from those things, where it's apparent on its face that someone died at the hand of another, and a situation where you have to gather evidence and it's not apparent on its face. Who is the source of the drugs? There's a lot of variables that go into deciding to charge a drug-induced homicide offense, and that isn't necessarily all known early on when the coroner is determining the manner of death. Well, let's talk about that. When was the death certificate issued in relation to when the grand jury was convened? I believe that was I think within the first several months after the death. The grand jury returned an indictment on... Let's see here. So, the answer to my question is that the death certificate was not issued for many months. The date of the indictment was July 5th, 2018. I don't have that information at my fingertips. I apologize. Fair enough. Fair enough. Okay. But with respect to the due process violation, the defendant has failed to establish that there was any clear violation, much less that there was any substantial and actual prejudice. Well, it's a pretty high bar to establish that in here. The defendant acknowledges that it's a novel claim. It's not apparent. We don't have any case law that even supports this. He's sort of cobbling together from cases that aren't even directly on point that there was a due process violation here, and the state would contend that that's just not the case. This isn't a clear and obvious violation. It's not substantial and actual prejudice. It doesn't meet either of those requirements. Even if this... And we don't know, so now this is an assumption, or we're talking about a possibility. Even if the grand jury indictment came before the death certificate, well, then they couldn't have actually presented it. But assuming they came close in time, would there be any obligation by the state to call that grand jury back and say, oh, by the way, this is the finding of the coroner, that it's accidental? I don't think so, because it's consistent with the drug and duty homicide statute. The victim accidentally overdosed. The state believed that that was absolutely consistent. There would be nothing inconsistent with the crime, with the statute that outlines the elements of the crime. Isn't really the difference here the difference between suicide and accidental death? In other words, if the victim here intended to take their own life, regardless of where they got the drug, that would be a suicide. If they took the drug without intent to harm themselves and died anyway, that is an accidental death. As opposed to a defendant who physically injected the victim, that is arguably under the coroner's definitions of homicide, a homicide. Is that true or false? I would say that's true. A homicide is generally apparent that a third party caused that person's death. There's very few cases outside- Hold on a second. The coroner is supposed to do a little more than just what looks apparent. That's why they have forensic pathologists that do autopsies and make determinations as both cause and manner of death. It's not just what's apparent. A gunshot wound can be suicide, it can be accidental, it can be a homicide. With all due respect to your example, it's not necessarily the decision-maker, so to speak. Not ultimately, but the physical impetus of the death, if it's a gunshot wound or a stabbing, these are the more obvious or apparent forms of homicide. The drug-induced homicide statute addresses a situation- Are you suggesting then the coroner can't figure that out? Isn't that what they're supposed to do, to examine all of the circumstances surrounding a death, regardless of what those circumstances might be, and then make a determination as to manner of death? Yes. But determining whether or not a third party had delivered drugs to that individual who injected the heroin and fentanyl, theoretically, that information, if it was known at the time, may have influenced the manner of death on the death certificate. But that information wasn't known, and it wasn't material to the crime that was charged. Did the coroner testify at the grand jury proceedings? No. And did the coroner, in preparing the death certificate, provide any additional report to the state that was introduced to the grand jury? Beyond the death certificate, no. Okay. And did the coroner ever testify in this case at trial? No. Okay. So even though he is technically a law enforcement officer, tantamount to a sheriff, in fact, if the sheriff isn't there, the coroner is, that in this case, there was a sheriff, there was an investigation by the state, and there was an investigation by the coroner that led to a finding of accident that is not necessarily inconsistent with a homicide. Is that correct? Yes, Your Honor, and I think you stated it a little more articulately than I was trying to. All right. Justice Gergensen, any other questions? Ben, there was a stipulation as to cause of death at the trial, not manner, but cause of death at the trial? Yes. It was the toxic combination of fentanyl and heroin. But that was testified to, and that's why no one, the forensic pathologist, did not testify. Is that correct? Correct. All right. And Justice Hudson, any other questions? At this time, thank you. Thank you. All right. Thank you, Mr. Barrett. Now, Mr. Schlaw, if you have any response, you may proceed, but I think Justice Gergensen might have some questions. No. Okay. All right. Then you may proceed. Very briefly, in response to Counsel Barrett's position, is that part of the problem with what's going on with this, with the whole opiate crisis, is the counsel opined to the court that my note said that, you know, this individual, the decedent, took this to get high. No. They take it because they have a dependency disorder that they need to take this drug. Mr. Schlaw, you objected to that information being provided to the jury. So, why are you arguing it to us today? Okay. And that point, I just wanted to make it clear that the show that these are truly not accidents. It should have been classified a homicide, but in the discretion of the coroner, it was not. I would like to just say, if I can briefly address, I'm sorry. I think that's just some background, or maybe it is Judge Hudson. You never got to in your opening argument. You have argued very strenuously that the defendant's constitutional right to confront witnesses violated when the forensic pathologist testified about the contents of the report that he did not personally prepare. My question to you is, doesn't that come in under well-established exceptions, but here's the rule, which is now Illinois Evidence Rule 703, which had a genesis in Wilson v. Clark. It's a statutory exception, non-testimonial. Why was there a violation of the defendant's confrontation right? Well, at the grand jury hearing, only Officer Fields testified. That's what we're dealing with here, is the grand jury, the motion and arrest of judgment was that the grand jury was misled. Therefore, by not showing the death certificate with the manner of death as an accident, I believe that it misled the grand jury and did not give them an opportunity to say, why should we indict for a drug-induced homicide when the manner of death was an accident? Doesn't the statute allow it to come into evidence as non-testimonial evidence? It comes in by statute. The death certificate or the coroner's report? Neither. The forensic pathologist Mark Peters testified about the contents of the toxicology report. He did not personally prepare. You have objected to that, correct? In regard to the Peterson, I'm sorry, Peters, we cited the case of Melendez v. Diaz. The state responded with the opinion of People v. Lovejoy, an Illinois Supreme Court case, 235 Illinois 2nd 97, where it's our opinion that the, in that case, the, it was reversed. The conviction was reversed. This was a case that was cited by the state. So the fact that the Peters report came in and we filed it in our appeal position that the trial court was wrong to let that document in under the Melendez v. Diaz United States Supreme Court case, but we're, we're, we believe that. Mr. Slaw, let's be clear. The toxicology report did not get admitted into evidence. Right. It's the testimony of Dr. Peters. So when you say left that evidence or let that document in, it never came in. That's correct. That's correct. That is correct. So Dr. Peters' testimony over the document, which was never offered, should have been barred by the court. Are you saying that Wilson v. Clark and the classic one doctor can review medical evidence of another doctor and come to conclusions can only apply in civil cases? Because we know it applies roundly in civil cases. Are you saying it does not apply in criminal cases? It can apply, I believe under Supreme Court rule 703, but clearly it, there still has to be proper foundation laid and there has to be proper qualifications. And we believe that the state as objected to by trial counsel, failed to meet its burden and that the court incorrectly, the trial court erred by taking, giving Dr. Peters' testimony a weight. Additionally, I would like- You're saying that was an abuse of discretion by the trial court. Yes. And we should, we should judge it, we should review it on that standard. Is that correct? Yes. If you want to sum up your position, well, first let me ask my colleagues, Justice Jorgensen, do you have any other questions? I do not. Thank you. Justice Hudson, do you have any other questions? I do not. Thank you. All right. You may sum up Mr. Slough. Since summary, we believe that the, this decision based on the brief should be reversed and or remanded back to the trial court for further proceedings. I do, I'm asking the court to take into consideration in our brief, the argument of ineffective counsel under the Strickland two prong standard that I didn't get to in my opening argument. Clearly it is part of our brief on page 22 when counsel Bly admitted that he didn't call a witness, Elizabeth Long, to testify about her drug transactions prior to the alleged occurrence before this court. I think it's, it's clearly ineffective counsel under the Strickland two prong standard that it prejudiced our client by, he didn't call the proper witness and it was clearly set forth in the brief, page 22. And it was replied to by the state, as I recall. So we certainly, we do take briefs into consideration. That's our first. I understand. I just wanted to say that I'm not brushed. I just misdocumented some of the time in the argument. All right. Well, thank you both counsel for your arguments. We appreciate the time you spent. And again, we thank you for your agreement to the continuance we requested previously. We will take this matter under advisement and we'll issue a decision in due course. And I know justice or judge Wysocki you're there somewhere. It's nice seeing you again. All right. Nice to see you judge. Thank you. You are now excused. Thank you. Thank you.